The STATE of Ohio, Appellee,

v.

WAGAR, Appellant.

[Cite as *State v. Wagar* (1993), 91 Ohio App.3d 233.]

Court of Appeals of Ohio,
Medina County.

No. 2131–M.

Decided Oct. 20, 1993.

*Norman Brague,* Wadsworth Director of Law, for appellee.

*Brian J. Williams,* for appellant.

DICKINSON, Judge.

Defendant Richard Wagar has appealed his conviction for misconduct at an emergency in violation of R.C. 2917.13(A). He has argued that (1) the trial court incorrectly overruled his motion for acquittal; (2) his conviction was against the manifest weight of the evidence; and (3) the trial court incorrectly failed to find that a federal regulation requiring those involved in an airplane crash to preserve the wreckage and records at the scene of the crash preempted an Ohio law prohibiting misconduct at the scene of an emergency. We affirm because the trial court correctly overruled his motion for acquittal, his conviction was not against the manifest weight of the evidence, and the trial court correctly found that the federal regulation relied upon by defendant did not preempt the state statute under which he was prosecuted.

## I

The parties have filed a stipulation of facts with this court pursuant to App.R. 9(C). That stipulation established the following facts.

On March 1, 1992, defendant attempted to land his "lightweight fabric" airplane at Freedom Field in Medina County. As a result of gusty winds, the plane crashed and came to rest upside down on the runway. Several officers of the Ohio State Highway Patrol responded to the scene, including Trooper Maria Bonomolo.

Defendant was "very upset," and desired to move his airplane. Trooper Bonomolo, however, instructed him several times not to do so. Despite the officer's instructions, defendant tied a rope to the plane in an attempt to move it. Officer Bonomolo again instructed defendant to refrain from moving the plane and defendant said he was going to move it anyway. Officer Bonomolo instructed defendant yet another time not to move the plane and, finally, defendant ceased his efforts to do so. As Trooper Bonomolo continued her investigation at the scene, she "allegedly touched or pointed at the aircraft with her clipboard." Defendant asked Trooper Bonomolo not to touch the plane because she might damage its fabric. Trooper Bonomolo then placed defendant under arrest for misconduct at an emergency.

On May 29, 1992, defendant was tried before visiting Judge John Judge in the Wadsworth Municipal Court. Defendant proceeded *pro se* at the trial, and was found guilty.

## II

### A

Defendant's first assignment of error is that the trial court incorrectly denied his motion for acquittal because the state failed to present sufficient evidence to support his conviction. Defendant was convicted of violating R.C. 2917.13(A)(1):

"(A) No person shall knowingly:

"(1) Hamper the lawful operations of any law enforcement officer * * * engaged in his duties at the scene of a[n] * * * accident * * *."

According to the stipulation of facts filed by the parties, Trooper Bonomolo told defendant several times not to attempt to move his plane. In giving this instruction, Trooper Bonomolo was acting within the scope of her authority as a law enforcement officer. Despite Trooper Bonomolo's instructions, defendant persisted in attempting to move his plane. There was sufficient evidence, therefore, to support his conviction for misconduct at an emergency. Defendant's first assignment of error is overruled.

### B

Defendant's second assignment of error is that the trial court's judgment was against the manifest weight of the evidence. The test we apply to determine whether a criminal conviction is against the manifest weight of the evidence was set out by this court in *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009, 1010–1011:

"[A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  * * * The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction."  (Citations omitted.)

As discussed above, Trooper Bonomolo told defendant several times not to move his plane.  He disregarded her instructions, lassoed the plane with a rope, and was about to move the aircraft until she again intervened.  There was, therefore, sufficient evidence to support defendant's conviction.  See *State v. Bewsey* (June 16, 1993), Summit App. No. 15857, at 9–10, 1993 WL 208314.

Defendant has argued, however, that the evidence weighed heavily against his conviction.  Specifically, he has asserted that, after Trooper Bonomolo saw him with the rope, he ceased trying to move the plane.  Apparently the officer then touched the plane with her clipboard and he asked her to refrain from touching the plane because she might damage it.  Trooper Bonomolo then told him she was "tired of fucking around with him" and arrested him.

Although Trooper Bonomolo's reaction to defendant's request that she not touch his plane was unprofessional, it did not render his arrest and subsequent conviction against the manifest weight of the evidence.  It may have been an indication that, had he not asked her to refrain from touching his plane, she would have exercised her discretion to not arrest him for his earlier violation.  It was not evidence, however, that the violation had not occurred.  Accordingly, defendant's second assignment of error is overruled.

## C

Defendant's third assignment of error is that the trial court incorrectly found that a federal regulation did not preempt the Ohio statute defendant was convicted of violating.  The federal regulation cited by defendant concerns the duty of an aircraft operator to preserve the wreckage and records at the scene of an airplane crash.  We find that the federal regulation did not preempt the state statute.

Pursuant to Clause 2, Article VI of the United States Constitution, the Supremacy Clause, federal law preempts any state law when there is a conflict between the two such that both laws cannot stand.  Nowak & Rotunda, Constitutional Law (4 Ed.1986) 311, Section 9.1.  In a recent case dealing with preemption, the United States Supreme Court reviewed what it termed settled preemption principles.  It stated that if a federal law does not contain an explicit

provision by which it preempts state law, a state law is not preempted by that federal law " " " 'unless it conflicts with federal law or would frustrate the federal scheme, or unless [we] discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States.' " ' " *Bldg. & Constr. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Massachusetts/Rhode Island, Inc.* (1993), 507 U.S. ——, ——, 113 S.Ct. 1190, 1194, 122 L.Ed.2d 565, 574, quoting *Metro. Life Ins. Co. v. Massachusetts* (1985), 471 U.S. 724, 747–748, 105 S.Ct. 2380, 2393, 85 L.Ed.2d 728, 745. Analysis of statutes under the Supremacy Clause begins with " 'the basic assumption that Congress did not intend to displace state law.' " *Bldg. & Constr. Trades Council,* 507 U.S. at ——, 113 S.Ct. at 1194, 122 L.Ed.2d at 574, quoting *Maryland v. Louisiana* (1981), 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576, 595.

Title VII of the Federal Aviation Act authorizes the National Transportation and Safety Board ("NTSB") to, among other things:

"(1) Make rules and regulations governing notification and report of accidents involving civil aircraft;

"(2) Investigate such accidents and report the facts, conditions and circumstances relating to each accident and the probable cause thereof * * *." Section 1441(a), Title 49, U.S.Code.

Pursuant to the powers afforded it by the Federal Aviation Act, the NTSB has issued the following regulation, relied upon by defendant in this case, regarding preservation of aircraft wreckage and records:

"(a) The operator of an aircraft involved in an accident or incident for which notification must be given is responsible for preserving to the extent possible any aircraft wreckage, cargo, and mail aboard the aircraft, and all records, including all recording mediums of flight, maintenance, and voice recorders, pertaining to the operation and maintenance of the aircraft * * * until the Board takes custody thereof * * *.

" * * * *

"(c) Where it is necessary to move aircraft wreckage, mail or cargo, sketches, descriptive notes, and photographs shall be made, if possible, of the original position and condition of the wreckage and any significant impact marks." Section 830.10, Title 49, C.F.R.

The state statute under which defendant was convicted does not conflict with the federal regulation recited in the previous paragraph. The state statute provides:

"(A) No person shall knowingly:

"(1) Hamper the lawful operations of any law enforcement officer, fireman, rescuer, medical person, or other authorized person, engaged in his duties at the scene of a fire, accident, disaster, riot, or emergency of any kind[.]" R.C. 2917.13(A)(1).

Rather than conflicting with the federal regulation regarding the scene of an airplane crash, the foregoing provision buttresses the federal provisions cited by defendant. A police officer at the scene of an airplane crash acts within her "lawful operations" when she tries to prevent someone from altering the crash scene. This assists an aircraft operator in performing his or her duty of preserving the wreckage at a crash scene. Defendant's attempt to prematurely alter the crash scene in this case was a violation of both the state statute and the federal regulation.

Nor does the state statute frustrate the federal scheme of preserving airline wreckage and records for the NTSB. As mentioned previously, the state statute serves as an aid to operators of aircraft involved in crashes because it helps law enforcement officers secure the scene of the crash.

Finally, it is apparent that the federal provisions do not occupy the field of airplane crash situations to the exclusion of the states. The main purpose of the federal regulation relied upon by defendant is preservation of information. The regulation is captioned "Notification and Reporting of Aircraft Accidents or Incidents and Overdue Aircraft, and Preservation of Aircraft Wreckage, Mail, Cargo, and Records." It does not begin to deal with the myriad of potential activities that police and safety personnel may need to engage in at the scene of a plane crash. Congress does not appear, therefore, to have intended to occupy the entire field of activities at an air crash scene.

R.C. 2917.13(A) is not preempted by federal law. Defendant's third assignment of error is overruled.

### III

Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and REECE, J., concur.